FILED

FEB 1 0 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY ALLENDER,

               Plaintiff,

v.

UNIVERSITY OF PORTLAND,

               Defendant.

CV. 09-485-PK

OPINION AND ORDER

PAPAK, Judge:

      Plaintiff Mary Allender filed this action against her employer, the University of Portland, alleging that it paid her less than her male counterparts for substantially similar work. Her amended complaint alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d), and its Oregon counterpart, Or. Rev. Stat. § 652.220, as well as Oregon law prohibiting discrimination in employment, Or. Rev. Stat. § 659A.030. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Page 1 - OPINION AND ORDER

Defendant's motion for summary judgment (#24) is now before the court. Plaintiff has conceded her claim under Oregon Revised Statute section 659A.030. Defendant's motion for summary judgment on the remaining state and federal equal pay claims is denied, for the reasons set forth below.

## BACKGROUND

Mary Allender is an Associate Professor at the University of Portland School of Business. The University of Portland organizes the business school into several different discipline teams based on areas of academic study. (Anderson Decl., #30, at 2.) Allender is a member of the economics discipline team, along with four other faculty members: Professor Adrangi and Associate Professors Barnes, Easton and Seal. *Id.*

Members of the regular faculty at the University of Portland may hold the title of assistant professor, associate professor or professor. (Hollander Decl., #43, Ex. 5 at 2.) Each of those positions requires a doctorate or the highest degree in the relevant profession. *Id.* at 4. In addition, each position requires "personal attributes," which the university defines as "marks of character and personality" that contribute to the objectives of the University. *Id.* at 3-4.

The University distinguishes among the assistant professor, associate professor and professor positions based on a faculty member's achievements in teaching, research and service. Thus, an assistant professor must demonstrate "competence in teaching and some achievement in scholarship." *Id.* at 4. An associate professor must have "increased effectiveness in teaching and advancing scholarship" as well as "cooperation in achieving the objectives" of the member's department and the University. *Id.* To reach the rank of full professor, a faculty member must demonstrate "distinguished fulfillment" of teaching and scholarship requirements or an "established reputation among scholars or notable contribution in public service, government or

Page 2 - OPINION AND ORDER

industry." *Id.* In addition, a professor must serve on department and university committees and demonstrate "initiative and sense of responsibility in achieving the objectives" of his or her department and the University. *Id.*

## I.    Criteria for Salary Increases

The dean of the business school makes decisions regarding pay raises for faculty on the economics discipline team. (Anderson Decl. at 1.) Different deans have expressed different criteria for salary increases. The current dean testified that he determines salary increases based on a professor's personal development plan, performance in the areas of teaching, research and service, and extraordinary circumstances such as a research award or disciplinary action. (Hollander Decl. Ex. 6 at 5-11, 14-15.) He ranks teaching as most important among the criteria, and research and service as secondary. *Id.* at 19-20. Moreover, during Allender's time at the university, at least one previous dean emphasized research as the most important factor. (Hollander Decl. Ex. 7 at 9.)

The current dean stated that a faculty member could receive a raise to bring his or her salary up to the level of another faculty member. (Hollander Decl. Ex. 6 at 15-16.) The dean does that, however, only when the disparity is extreme. *Id.* at 28. The dean did not equalize Allender's salary with other members of the economics discipline team because he did not think her salary was disproportionately lower than other members of the team. *Id.* at 31-32.

## II.    Allender's Employment History With the University of Portland

The University of Portland first hired Allender in 1982 as an untenured, adjunct assistant professor in the business school and has promoted her several times since then. (Levelle-Haslitt Decl., #33, Ex. 1 at 4.) In the 1989-1990 academic year, the University promoted Allender to assistant professor and then, in the 1995-1996 school year, promoted her to associate professor.

Page 3 - OPINION AND ORDER

(Anderson Decl. Ex. 1 at 12, 19.) Allender became a tenured faculty member in the 1996-1997 academic year. Allender has published twenty refereed[1] journal articles, and has two more forthcoming. (Allender Decl., #42, Ex. 1 at 2-3.)

Allender's salary for academic years 2008-2009 and 2009-2010 is less than every member of the economics discipline team with the exception of Barnes.[2] (Anderson Decl. at 5.) In addition, for her entire time at the University, her salary has been below the salaries earned by Adrangi and Seal. *Id.* From academic years 1995-1996 through 1997-1998 and 2004-2005 through the present, Allender has had a lower salary than Easton. *Id.* Allender's salary, however, has been higher than Barnes' salary for every academic year since 2007-2008, when Barnes became an associate professor. *Id.*

The University has twice disciplined Allender for performance issues. First, as a result of performance problems that she admits occurred, Allender received a lower-than-usual salary increase for the 2004-2005 academic year. (Lewis Decl., #34, at 2.) Second, when a new dean assumed oversight over the business school during the 2006-2007 year, he learned of two incidents involving Allender that raised performance concerns. (Levelle-Haslitt Decl. Ex. 1 at 23, 25, 28-29). The dean discussed the incidents with Allender, who denied wrongdoing. (Anderson Decl. Ex. 2; Allender Decl. at 2.) The dean, however, conducted an inquiry, concluded that Allender was at fault, and took disciplinary action against her, which included denying her a pay raise for the 2008-2009 academic year and not allowing her to teach in the summer of 2009. (Anderson Decl. Ex. 2 at 3; Levelle-Haslitt Decl. Ex. 2 at 11.)

---

1  Allender's curriculum vita refers to refereed journal articles. (Allender Decl. Ex. 1 at 2-3.) A refereed journal article is the same as a peer-reviewed journal article. (Hollander Decl. Ex. 6 at 36.)

2  In 2009-2010 the University froze all pay raises. (Anderson Decl. at 4.)

### III.    Compensation of Other Members of the Economics Discipline Team

####       A.       Professor Adrangi

Professor Adrangi began working for the business school as an associate professor in the 1988-1989 academic year.  (Anderson Decl. at 2.)  He was appointed to full professor in the 1993-1994 academic year.  *Id.*  Adrangi's salary has remained higher than Allender's salary throughout her time at the University.  *Id.* at 5.

####       B.       Associate Professor Barnes

Associate Professor Barnes joined the business school as a visiting assistant professor in the 2000-2001 academic year.  *Id.* at 2.  Barnes became an associate professor in the 2007-2008 school year.  *Id.* at 3.  His salary has been lower than Allender's salary since he joined the University.  *Id.* at 5.

####       C.       Associate Professor Easton

Associate Professor Easton began working for the business school as an assistant professor in the 1985-1986 academic year.  *Id.* at 3.  Easton became an associate professor in the 1993-1994 academic year.  *Id.*  Easton served as a discipline team leader for academic years 2006-2007 and 2007-2008 and resumed that position for spring semester of 2009-2010.  *Id.*  He has published eight refereed journal articles.  (Hollander Decl. Ex. 3 at 2-3.)  Although Easton's current salary is higher than Allender's, he made less than Allender from the 1998-1999 school year through the 2003-2004 term.  (Anderson Decl. at 5.)

In addition to his regular employment history, two episodes play a part in Easton's current salary.  Easton took a sabbatical in 1997-1998, which reduced his salary for that year.  *Id.* at 3. In addition, in 2008, the University disciplined Easton by giving him a lower salary increase for the following year.  (Hollander Decl. Ex. 6 at 34; Ex. 8 at 2-3.)  The dean decided on that

Page 5 - OPINION AND ORDER

punishment on the basis that Easton expressed remorse, took action to correct his behavior, and had completed other exceptional work that year. *Id.*

**D.    Associate Professor Seal**

Associate Professor Seal began working for the business school as an assistant professor in the 1977-1978 academic year. (Anderson Decl. at 3.) Seal became an associate professor in the 1981-1982 school year. *Id.* Seal received a substantial raise when he became acting dean of the business school in the 1982-1983 school year, because that position involves a significant administrative contribution. (Anderson Decl. at 3; Ex. 7 at 5-6.) The following year he became dean and received another substantial raise. *Id.* at 7. Allender testified that Seal was unsuccessful as dean. (Levelle-Haslitt Decl. Ex. 1 at 31.) He served as dean until 1987, when he resumed his former associate professor position, which he continues to hold. (Anderson Decl. at 3.) Seal served as the economics discipline team leader for the 2008-2009 school year and for fall semester of 2009-2010. *Id.* Seal has published four journal articles. (Allender Decl. Ex. 2.) Seal's salary has remained higher than Allender's salary throughout her time at the University. (Anderson Decl. at 5.)

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such

Page 6 - OPINION AND ORDER

that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

## DISCUSSION

### I.    Equal Pay Act, 29 U.S.C. § 206(d)

The Equal Pay Act provides, in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

### A.    Whether Allender Established a Prima Facie Case

To establish a claim under the Act, the "plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of Southern Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999). Thus, the Act "creates a type of strict liability; no intent to discriminate need be shown." *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986) (citation omitted).

#### 1.    Substantially Equal Work

As part of a prima facie equal pay claim, the plaintiff must establish that his or her job is "substantially equal" to the jobs performed by members of the opposite sex. *Stanley*, 178 F.3d at 1074. The court compares the jobs in question, not the relative skill of the individuals who hold the jobs. *Id.*; *see also Hein v. Oregon College of Education*, 718 F.2d 910, 914 (9th Cir. 1983) ("The statute explicitly applies to jobs that require equal skills, and not to employees that possess

equal skills."). Moreover, "it is actual job performance requirements, rather than job

classifications or titles, that is determinative." *EEOC v. Maricopa County Cmty. Coll. Dist.*, 736

F.2d 510, 513 (9th Cir. 1984); *see also* 29 C.F.R. § 1620.13(e). Courts examine whether the jobs

at issue have a "common core of tasks" and then determine whether any additional tasks required

for one job but not the other make the two jobs substantially different. *Stanley*, 178 F.3d at 1074.

Thus, minor differences in responsibility do not make the equal pay standard inapplicable.

*Maricopa County Cmty. Coll. Dist.*, 736 F.2d at 514.

      Here, the parties dispute whether Allender has met her burden to show that her male

colleagues perform jobs that are substantially equal to hers. Allender asserts that all the

professors in the economics discipline team must teach classes, do research and provide service

to the University and that the qualifications for appointment as an associate professor are the

same for all members of the team. The University, however, contends that Allender has failed to

identify any similarly situated male employees because Adrangi is a full professor and the

remaining three associate professors differ from Allender with respect to seniority and service to

the university.

      I find the University's argument only partially persuasive. I agree with the University

only to the extent that Professor Adrangi, as a full professor, does not perform a job that is

substantially equal to that of an associate professor. Rather, appointment as a professor requires

distinguished teaching, an established scholarly reputation or notable public contributions, and

service on committees, attributes that are not required of associate professors. I therefore

conclude that the job of professor is not substantially equal to the job of an associate professor.

      I reject, however, the University's argument that the male associate professors in the

economics discipline team are not similarly situated to Allender because they have greater

Page 8 - OPINION AND ORDER

seniority or service to the University. The University improperly relies on the Ninth Circuit's statement in *Hein* that, "in a professional setting such as that of a college," a plaintiff must show she received lower wages than male employees "similarly situated with respect to other factors, such as seniority, that affect the wage scale." 718 F.2d at 916. Here, no evidence indicates that the University relies on seniority as a factor when it sets the wages of associate professors on the economic discipline team. More importantly, the facts show that the University requires equal skill, effort, and responsibility from all associate professors on the economics discipline team. Thus, I conclude that experience is more appropriately addressed as part of defendants' affirmative defense. *See Wachter-Young v. Ohio Cas. Group*, 236 F. Supp. 2d 1157, 1163 (D. Or. 2002) citing *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 877 (9th Cir. 1982) (affirmative defense cannot be an element of the case of action); *see also Russell v. Placeware, Inc.*, No. 03-836, 2004 U.S. Dist. LEXIS 21465, at *24-25 (D. Or. Oct. 15, 2004) (finding that "an employer's focusing on the experience of one allegedly comparative employee is not enough to prevent plaintiff from establishing a prima facie case"). I therefore conclude that Allender has met her burden to show that Barnes, Easton and Seal perform substantially equal work.

## 2.    Different Wages

As noted, a prima facie case requires the plaintiff to prove both substantial equality in jobs and disparity in wages. *Hein*, 718 F.2d at 916. In proving wage disparity, a plaintiff cannot arbitrarily exclude employees and therefore must include employees who earned less than the plaintiff if those employees performed substantially equal work. *Id.* Rather, a plaintiff may establish a prima facie case "only if her wages are less than the average paid" to her male counterparts. *Id.* at 917.

Here, Allender has established that she performs substantially similar work to that

Page 9 - OPINION AND ORDER

performed by Barnes, Easton and Seal. The evidence shows that for each year, from the 1995-1996 academic year until the 2006-2007 academic year, the average of Easton and Seal's salaries was more than Allender's salary. In addition, from the 2007-2008 academic year, when Barnes became an Associate Professor, until the present, the annual average of Easton, Seal and Barnes' salaries exceeded Allender's annual salary. Thus, Allender has presented evidence of disparity in wages. I therefore conclude that Allender has established her prima facie case.

**B.      Whether the University Established an Affirmative Defense**

A wage disparity does not violate the Equal Pay Act if the employer can attribute it to one of the following exceptions: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "These exceptions are affirmative defenses which the employer must plead and prove." *Maxwell*, 803 F.2d at 446 (citation omitted). The unique qualities that each faculty member brings to an academic community requires a "thorough and sensitive appraisal" of affirmative defenses. *Hein*, 718 F.2d at 920. A defendant, however, must offer more than "post-hoc rationalizations" and instead justify wage disparities with "legitimate institutional interests." *Id.* The court must determine whether the employer's justifications "reasonably explain the differences" in salaries. *Id.*

Here, the University asserts that the disparity between Allender's salary and the salary of other economics faculty members is due to factors other than sex. Specifically, the University argues that Allender's performance issues negatively impacted her wages and that Easton and Seal, the two associate professors who have a higher salary than Allender, had more seniority than Allender and a better record of service. I address these arguments below.

## 1.    Allender's Performance Issues

A defendant may establish an affirmative defense to an equal pay claim if it can show that the pay disparity was due to performance issues. *See, e.g., Jenson v. PCC Structurals*, No. 01-162, 2002 U.S. Dist. LEXIS 25529, at *35 (D. Or. July 22, 2002) (defendant established an affirmative defense to the extent that disciplinary write-ups of the plaintiff accounted for subsequent denial of her promotion but failed to overcome plaintiff's prima facie case regarding her wages prior to the disciplinary action); *see also Smith v. Bull Run Sch. Dist. No. 45*, 80 Or. App. 226, 232, 722 P.2d 27, 29 (1986) (upholding bench trial judgment for the defendant, in an action under Oregon Revised Statute section 652.220, where defendant presented evidence that, in the two years at issue, it had received complaints about the plaintiffs and paid them less to improve their performance).

Here, the University asserts that the disciplinary actions against Allender in the 2003-2004 academic year and the 2008-2009 academic year account for the current pay disparity. The University, however, overlooks that Allender has presented evidence that she earned less than her male counterparts in the years preceding those disciplinary actions. Thus, I conclude that the University's reliance on the disciplinary actions is insufficient, on its own, to reasonably explain the differences in salaries.

## 2.    Wage Disparity Between Allender and Easton

Easton made more than Allender from the 1995-1996 academic year until the 1997-1998 academic year and again from the 2004-2005 academic year until the present. The University contends that Easton's salary was higher than Allender's for the initial years because he was appointed to Associate Professor before Allender. The University, however, has not demonstrated that Easton possessed greater qualifications than Allender when he became an

Page 11 - OPINION AND ORDER

Associate Professor. Rather, the University merely points to the fact that Easton became an Associate Professor two years before Allender did. As Allender points out, the University has submitted no evidence that it determines salaries based on seniority. In fact, the University's practice of equalizing salaries for professors who hold the same title suggests that seniority is not a factor in salary determinations.

The University, however, has offered a reasonable explanation for why Easton's salary exceeded Allender's salary in more recent years. After the 1997-1998 academic year, Allender's salary surpassed Easton's for six years, until 2004-2005, when the business school first subjected her to discipline. In addition, although the business school also disciplined Easton, it offered a gender-neutral reason for its decision to punish him to a lesser extent than Allender. Allender does not rebut that she was subjected to discipline, or the reasons that Easton received a lesser punishment. Thus, I find that the University has offered a gender-neutral reason for the more recent disparity between Allender's and Easton's salary.

### 3.    Wage Disparity Between Allender and Seal

The University argues that Seal's seniority and former service as economics discipline team leader partially explain his higher salary. As discussed above, seniority does not reasonably account for the wage disparity because the University did not submit evidence that it relies on seniority to set wages. Moreover, service as economics team leader does not reasonably explain Seal's higher salary because Allender earned a lower salary before Seal served as a team leader.

The University, however, also argues that Seal's service as dean of the business school justifies his higher salary and that he and Allender earned raises at an approximately equivalent percentage throughout her time as an associate professor except for the years when the school subjected Allender to discipline. An employer may legitimately employ a policy of maintaining

Page 12 - OPINION AND ORDER

higher pay for employees who step down from management positions. *Russell*, 2004 U.S. Dist. LEXIS 21465, at *31 (finding that defendant established gender-neutral reason for an former manager's higher wages where the company had a policy of allowing a valuable employee who accepted a lower-level position to maintain his or her prior salary). Moreover, the University argues, relying on *Hein*, that "salary differentials based on unequal starting salaries do not violate the Equal Pay Act if the employer can show that the original disparity was based on a legitimate factor other than sex." 718 F.2d at 920.

The University's argument, however, presupposes that the University awards salary increases at an equal rate for all faculty members, regardless of performance. In *Hein*, the court found that salary increases tended to perpetuate the differential in starting salaries and neither party disputed that finding. *Id.* at 920. The University, however, does not provide raises across the board, but rather assigns raises based on teaching, scholarship and service. Thus the facts here do not resemble the facts in *Hein*, because here, a professor who starts at a lower salary may reduce the wage gap if she outperforms her male colleagues, whereas in *Hein*, the court found that salary increases perpetuated the wage gap.

Although Allender's case does not appear to be a strong one, I find that questions of fact remain regarding the University's affirmative defense. The evidence shows that, even in the years that Allender was not subject to discipline, Allender and Seal did not receive raises at an equivalent percentage. In some years Seal received a higher percentage while in others Allender earned a higher percent increase. Moreover, Allender outperformed Seal in the area of research and at least one former dean considered research highly important in setting salary increases. In addition, the current dean explained that research and service were roughly equivalent in importance. Finally, Allender testified that Seal was not successful as dean. Reading the facts in

Page 13 - OPINION AND ORDER

the light most favorable to Allender, the evidence creates a question of fact regarding whether

Seal's larger salary is reasonably attributable to his former service as dean. I therefore deny the

University's motion for summary judgment on Allender's federal Equal Pay Act claim.

## II.   Oregon Equal Pay Act, Or. Rev. Stat. § 652.220

Oregon's Equal Pay Act provides:

No employer shall:

   (a) In any manner discriminate between the sexes in the payment of wages for work of comparable character, the performance of which requires comparable skills.

   (b) Pay wages to any employee at a rate less than that at which the employer pays wages to employees of the opposite sex for work of comparable character, the performance of which requires comparable skills.

Or. Rev. Stat. § 652.220(1). Like the federal Equal Pay Act, the Oregon law provides exceptions

for payment "made pursuant to a seniority or merit system which does not discriminate on the

basis of sex" and for disparities in wages "based in good faith on factors other than sex." Or.

Rev. Stat. § 652.220(2). Thus, "[t]he effects of the state and federal equal pay acts are

substantially the same. Both prohibit the payment of different wages to members of the opposite

sexes for the performance of comparable or equal work, unless the differential is based on one of

several enumerated nondiscriminatory factors." *Smith*, 80 Or. App. at 229. Moreover, the

plaintiff's and defendant's burdens under the Oregon law are the same as the burdens under the

federal Equal Pay Act. *Id.* at 229. Thus, in Smith, the court applied its analysis of plaintiff's

state law equal pay claim to her claim under the federal Equal Pay Act. *Id.* at 229.

Here, the parties do not distinguish between Allender's federal and state law equal pay

claims, with the exception that Allender argues the state law requirement that jobs be merely

"comparable" suggests that it easier for plaintiff to establish a prima facie case under state law.

Page 14 - OPINION AND ORDER

Because I find that Allender has established her prima facie case under federal law, I need not address that issue. Moreover, the University does not distinguish between federal and state law in its arguments in support of its affirmative defenses, nor do I see any reason to do so. I accordingly deny the University's motion for summary judgment on Allender's state law equal pay claim for the same reasons set forth in the analysis of her federal Equal Pay Act claim.

## CONCLUSION

Defendant's motion for summary judgment (#24) is denied.


Dated this 9th day of February, 2010

Honorable Paul Papak
United States Magistrate Judge